I'd like to reserve four minutes for rebuttal. Mr. Bergrin is before this court, like most of my clients, after an encounter with the criminal justice system that resulted in sanctions and he's unhappy with those. What makes this unique is that he was not convicted formally, but he was found to be mentally incompetent and then the judge dismissed the case. Mr. Bergrin doesn't like having to live with the determination that he suffers from mental disease or defect and has appealed on that now. He is out. When they dismissed him, they let him out. This is why I'm here. He doesn't want to, I believe he's made a very rational decision. He does not like having to live with that label of mental disease or defect because he doesn't suffer from any and that is what the medical testimony at the hearing said. What collateral consequences of the ruling is he experiencing in terms of governmental action infringing on his liberties or reputation? I believe it's in the state of New York. There are issues with him being able to vote and there are issues with him being able to, if he were in Ohio. That can't be right. I'm sure he can vote. Really? I quoted the statute. Really? But incompetence isn't permanent. This ruling, isn't it possible that he can go and use the reason psychiatrist and say I should be able to vote? I would think that wouldn't be that hard. I don't know what that process is, your honor. That information isn't in the record. Part of the difficulty was Mr. Bergrin got to court and the judge had kind of an indication you could tell where he was headed. His lawyers were headed in the same direction and the government was headed in the same direction and Mr. Bergrin was the only one objecting. So his ability to make a record that would have been made if I was there was not accurate. It wasn't there. The proponents of finding him... Do you appreciate that if he wins this appeal he could be recharged? Yes, he is aware of that. He specifically stated at the hearing that given the choice between being found mentally incompetent and going to trial on these issues, he prefers going to trial. And he still prefers going to trial. Well, what does he need to show to persuade us on appeal to vacate the incompetency adjudication and send the case back for further proceedings? I don't believe there is any medical evidence. There were three different evaluations. There were two done initially. One was done by a psychologist retained by defense counsel. One was done by a government facility in Chicago. The government facility in Chicago said he was competent to stand trial back then. The psychologist said that he had some issues and that he needed more treatment. So the court ordered him sent to Butner for further treatment to make him competent. The Butner authorities in August of 16 certified that he was competent to stand trial. So they had a hearing. The defense lawyers objected to this determination and put forth some letters that Mr. Berggren had written to various people. Mr. Berggren is not the easiest person to get along with, I suspect. He has said some nasty things. Threatening to kill FBI agents? Well, he put that in an email to his cousin. He didn't send it to the FBI agent. In fact, he said in the email to his cousin, don't send this. I'm not sure that he would have ever sent it. But that is a matter that has never been adjudicated. He says outlandish things all the time. You don't think he's a threat to anybody or about anything? I don't think so. I don't have access to all the discovery in this case. All I have is what is in the official record. But I've been dealing with a variety of people over the last 30, 40 years, so I have some sense. And I'm not threatened by Mr. Berggren saying he's going to sue me and that sort of thing, as he's on occasion said. So he's not going to kill you anyway? No. In that sense, he's not threatening to kill me. Well, we're being asked to overturn a ruling of the district court with regard to your client. And as to the defendant's competency, I suppose, what standard of review are we to use in determining whether the district court's ruling was erroneous? I believe it's a clear error standard on the factual issues. That's hard to overturn, isn't it? Well, it is. But when you read the record, in other words, you have the testimony and the report of the Bureau of Prison Psychologists that says he's competent to stay in trial. There is a judicial diagnosis of delusions. I mean, those weren't unsupported. I mean, he's still saying that his trial counsel's I don't think the trial judge is required to pretend he doesn't know what people said during the first evaluations. I mean, mental competence is a fluid concept, right? I mean, no one would say it's all or nothing at all. And so he would have been on one side of the line earlier, on the other side of the line later, but still with some concerning things. The thing is, delusions, everybody talked, well, the two earlier reports, and I've referred to these in the briefs, talk about delusions, and they both say, both the psychologist that was relied on, as well as the government psychologist, that he doesn't suffer from medical or psychiatric delusions. He may be, you know, whatever is going on What's going on when he says, I think my trial counsel is conspiring with the U.S. attorney? That would not be a delusion? What do you think that is? That is not a medical delusion under the, by the What is it? I don't, you can tell me, don't I think it's bravado myself. Excuse me? Bravado. But doesn't it, remember the question is whether he's competent to assist in his defense, and if he's thinking his lawyer is conspiring with the U.S. attorney, how is that going to work? It's a really critical delusion or whatever you want to call it. He has problems with this set of lawyers, and I don't know This set of lawyers? Yes. In all six, seven, what's the number? What do you mean? Well, he has the issue with the U.S., the public defenders, the Federal Defender's Office in Cleveland. The initial, his introduction to His prior lawyers weren't all public defenders No, but he, there were, there was a retained lawyer The first set of lawyers his mother got, and they disappeared quickly for the Federal Defender's Office. The Federal Defender, when he got to the hearing for the preliminary hearing, they gave him a form saying, we won't let you know I'm being investigated, and so I might have a conflict of interest, but we'd like you to waive that. He didn't, he said, no, I think I want to go ahead and have another set of lawyers. He had a CGA lawyer at that point. He was able to come up with some money and retained counsel, replaced him, the CGA lawyer. Then that lawyer was But just try to answer this question. If you're the trial judge, is it not troubling if the person's, the defendant thinks that their lawyer is conspiring with the U.S. Attorney? There's no factual basis for that. He is someone who has said a lot of other things that have no factual basis. And now you're going to have a trial where that person is supposed to assist in his defense. I mean, it's a, I don't think that's clearly erroneous to say you're going to have a hard time assisting in the defense. Judge, I guess, I don't keep track of the number of times that my clients tell me I'm conspiring with the government. What do you think he's doing? He's trying purposely to defeat the system or screw up the system so that nothing really happens. It's a con, so to speak. I don't know if it's a con or not. But I think that his, the motivation for his, he wants, he doesn't trust these lawyers. And he hasn't got a good way to get rid of them. And that's, you know, he wants a different set of lawyers. But the judge isn't willing to treat it that way. He's just, he has spent Did he ever insist on trying, defending himself for a right? At that hearing, he tried to at that last hearing. That was pretty well ignored. And I didn't raise it as a separate issue because it was, you know, that is an area where the judge has some discretion. Who is he living with? How is he surviving? I think there's money in the family. He lives in New York. He lives in Manhattan. And he's lived there all of his life. What happened was, I remember reading about the case about ten years ago where there was a former United States, assistant United States attorney in New Jersey who was convicted of murders and RICO charges and things like this that were pretty severe. And this former U.S. attorney was, or assistant U.S. attorney was a cousin of this man. And my client, I'm not saying he was the best judgment, but he kind of took up this cause and was kind of involved in that. He wasn't involved in any of the criminal activity. He was never charged with anything. But that kind of got him incensed at the people involved in this. And so that is what led to this. Isn't it a little disturbing to have this fellow who has at least threatened the life of, who is it, FBI agent, what's his name, Sean Rokos, is that his name? Yeah, I think the... Isn't it a little strange for him to just be having threatened the life of this FBI agent and appearing to be somewhat, we don't know whether he's a con or delusional or what's wrong with him, just to be out running around without any limitation? The judge felt comfortable doing that. And I think probably the best evidence of his competency to stand trial is his behavior in that hearing. If you read what he was doing, if you look at the transcript of the last hearing in October of 16, you see he is capable of functioning in a courtroom situation. The judge didn't prevent him from, when the judge said stop, he stopped. Was he in jail pending trial? Yes, he was in jail the whole time pending trial. Up until they dismissed... Tried to get out on bail or bond or whatever? They determined he... He was a risk. He was a risk because they charged him in Cleveland and he lived in Manhattan and they didn't, so he was... A risk then but not a risk now. Having been declared to be incompetent and unable to stand trial beforehand, he was a risk but after declaring that he's not a risk anymore. That is the position we're in. And that seems a little inconsistent, doesn't it? Yes, I think it is inconsistent. And I think that it's... I think that Mr. Berggren presented problems and they didn't figure out how to deal with him. As one of the psychologists said, he was his own worst enemy. He wants to be tried. What? He wants a trial now. He wants a trial. And I think this is a very triable case. I mean, from having tried some untriable cases, I think this has a lot... There's more to this than... The whole trial is going to turn on how realistic the threat was because he was in the wrong city? Yes. And I don't know what the discovery is. I know that the defense lawyers viewed it as a triable case, not just me but the Federal Defender's Office. All right. I see that you're out of time. Yes, sorry. Thank you. May it please the Court, Brian McDonough on behalf of the United States of America, and it is the government's position that the trial court in this case erred in finding Mr. Berggren incompetent. But the trial court did not clearly err based on the unique facts and circumstances of this case. The trial court was the only person who had an opportunity... Before we get there, what's your position on jurisdiction? On jurisdiction as to whether the... Would this be an advisory opinion and so forth? Yes, on the mootness grounds, the government's opinion is that there is no actual case or controversy pending before the court, and as such, that the appeal is moot and it should be just... So what would happen if that... Let's say you're right about that. What would happen? Would we then vacate the incompetency finding? Because when things become moot on appeal, under Munsingware, that's what you do. And would that, in a weird sort of way, fix things from his perspective? Well, in terms of the collateral consequences of the incompetency finding, the government's position on that is that this finding by the trial court that he was incompetent to stand trial, by Mr. Berggren, that any of those collateral consequences of the right to vote or the right to purchase a gun is speculative and that he's got remedies in New York or remedies in Ohio. In terms of the ability to vote, he does not have a guardian. He has not been adjudicated by a probate court. He's still able to manage his own affairs. He's able to still go ahead and conduct business. I'm pretty sure he can't possess a gun. I think if there's a finding of incompetency under federal law, I think that's it. There's no further inquiry. And under Ohio law, it would depend on, is it a match? Under state law, what that definition is, would it actually match up? Certainly you have cases where someone's probated. They can't take care of themselves. They can't take care of their business affairs. There's a guardian appointed and they're incompetent. In this case, Mr. Berger, he's in Manhattan. He has a trust fund from his mother. He's a successful real estate investor who's retired. He's living on his own in an apartment. He's represented himself in bankruptcy proceedings pro se, and he's been successful on that. So he would not fit that incompetency finding that under New York law, election law, or under Ohio law, it would be separate on that. So the government's position on that. There are not too many people who are competent who would say having an incompetency finding against them has no collateral consequences. That's a pretty bizarre thing to say. I really can't imagine a competent person saying, oh, yeah, no big deal. It was just one court. It's a district court. It's a federal court. There are state courts. The federal courts aren't always right. I mean, really. You would have certainly different competence. Like in this case, you had the trial court saying you have a standard of competency to stand trial. You also have a standard of competency to represent yourself under FRERETA. So it's just a level of degrees regarding that. So in terms of him being prevented from voting or preventing from purchasing a gun, the government's position is that would be speculative and that it would really depend on the state. And then if he wanted to challenge that in a proceeding through New York, through the Board of Elections, or through a review on that, that he certainly would have that available in terms of those challenges. So the government's position that he is competent and ought to stand trial, is that it? Correct. That was the government's. Based on the facts of this case, the government stood shoulder to shoulder with BOP, and Dr. Nieberding found him to be competent, and we stood by Dr. Koenig, who also found him to be competent. But the trial court had two permissible views, and the trial court relied on Dr. Schmedlin under that second prong of Dusky that says, did Mr. Berggren have a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding? And in this case, you've got over the course of 22 months, you've got Mr. Berggren writing 38 letters, you've got the trial court conducting seven different pretrials in a competency hearing, and you've got the trial court as the only person who gets to see Mr. Berggren before and after the competency evaluation. And after that first competency evaluation, the trial court looked at Dr. Nieberding's opinion of competency, Dr. Schmedlin's, and decided to go with Dr. Schmedlin and said that Mr. Berggren does not have that ability to presently assist his attorney. So we're going to send him for a restoration period. He can sell real estate and is apparently making good money. He's taking care of himself, and yet he's been declared he can't advise with his lawyer. Correct. He had issues, and Dr. Schmedlin opined that his restoration could be sped up if he was released from custody and placed back in Manhattan. And the trial court sent Mr. Berggren to Butner, and then he's in Butner about eight months. He comes back, and as soon as he comes back before the trial court again, Mr. Berggren still believes that there's a grandiose conspiracy, that the FBI is out to ruin his life, contacted 50 to 75 people, that the trial court judge is a Nazi war criminal who's after him, that there is this overarching conspiracy against him. And the trial court at that point, eight months have gone by and nothing has changed. This Mr. Berggren is still unable, and even his own attorneys. Counsel here sort of suggests that that's just a big con. Dr. Koenig and Dr. Nieberding found Mr. Berggren to have a flare for the dramatic, a flare for hyperbole. Evidence of a potential con could be seen in his motions to transfer Venue to New York where he engages, he has this prolific letter writing campaign, and he tries to convince the court that if you grant my motion and transfer the case for Venue to New York, I'll stop with the letter writing campaign. So in terms of that con, in terms of perhaps playing that, but his belief that the government was trying to withhold his laxative medication and trying to murder him and those things on that, or that the marshals turned down the degrees in his cell to freeze him. Your position is what should we do with the case? The position of the government, based on the unique facts of this case, the government would ask this court to affirm the decision of the trial court in terms of dismissing the case and finding him incompetent because the trial court, although the government's position is the trial court erred, the trial court did not clearly err, and it's a deferential finding to the facts of what was presented to the trial court. The trial court was in the best position to weigh the credibility of the medical professionals. The court erred in what? How do you describe the error that the court made? That the court erred in finding Mr. Bergeron to be incompetent, but that the court did not clearly err in that. But again, based on the unique facts and limited to the facts in this case, that the trial court did have the ability to make a ruling and that there was still evidence the trial court could rely on, so that it was not clearly erroneous. What would be done if we think that the trial court clearly erred? Well, if this court were to find, based on this case, that the trial court clearly erred, then the case would be reinstated. You would go forward with it? We'd go forward with the trial. We did oppose the motion to transfer the case to the Southern District of New York based on Mr. Bergeron's insistence that there are 50 to 75 witnesses that he wanted to call. He says that the FBI contacted to ruin him. But we would go forward with the trial. This was a three-count case of cyber-stalking, retaliating against a federal law enforcement officer, and an interstate communication threat. It was a pre-Alanis case. 2015 was the indictment date on that. But we would be in the position to go to trial. What happened with Ferretta? Did Judge Polster find him incompetent for Ferretta purposes also? The trial court actually never even got to Ferretta. And the reason was, although Mr. Bergeron had eight different attorneys, so initially he comes in. Maybe I'm misunderstanding. I thought he invoked his right to represent himself. Am I wrong about that? No, you are correct. He did attempt to represent himself pro se, but the trial court didn't get there yet. What do you mean he didn't get there? The trial court wanted to first of all find, to determine his competency first. Okay, so trial courts have to reject all the arguments of defendants, right? And so I assume what you're really saying is implicit and his incompetency finding was he was also incompetent to represent himself. Yes, correct, Your Honor. There would be certainly a lower threshold of competency to stand trial and then a higher threshold of competency to represent oneself. And in this case, through the eight attorneys, through the retained, and then through the public defender, and then. Does the case law say that? I mean, it makes sense, but I just didn't know that. There are different levels of incompetency for purposes of helping a lawyer versus helping yourself? Well, the trial court mentioned that, that under Dusky you've got the two prongs on it. But then that there would be some additional requirements under Ferretta, being able to understand your defenses and understand the perils of going without having representation so that it would require something more, a higher level on that. And the trial court in this case never got to the Ferretta portion of it, although Mr. Berggren wanted to go ahead and represent himself because the trial court had to get to the threshold issue of whether Mr. Berggren was competent. And in this case, again, the trial court also relied on Mr. Berggren's own attorneys, and his own attorneys indicated that Mr. Berggren, under Dusky, did not have that sufficient present ability to assist in his own defense. He was insisting on a strategy that would undermine his defense. He essentially would be giving the government motive by calling 50 to 75 witnesses to say that the FBI was attempting to ruin his life. That would actually give the government motive to say, well, why did Mr. Berggren send that email from Cleveland, Ohio, to his cousin in New Jersey? He's been able so far to successfully get himself excused from any trial, excused from the threat of going to jail, and is, according to what we think is true, living in New York, perhaps in the lap of luxury because of his family's previous wealth. So he's successfully beat the system so far, right? Well, the government would argue that had he gone to trial and had he been convicted, the guideline sentence would have been 15 to 21 months, and he'd already served 22 months in custody. Threatening an FBI agent gets you less than two years in prison? Pardon? Threatening to kill an FBI agent gets you less than two years in prison? It is disturbing regarding that threat because at the time the government did not know, and it wanted to act on every single threat, whether it was New Jersey FBI, Pittsburgh FBI, Cleveland FBI. After Mr. Berggren sent that email to his cousin in New Jersey, that cousin gave it to her husband, who gave it to the defense attorney, to the AUSA, to Pittsburgh FBI, to Cleveland FBI, and Cleveland FBI acted on it promptly. That's why we proceeded by a complaint. And at the time we didn't know. If you look at it, and then I think in the whole context of those 38 letters he wrote, what Mr. Berggren is all about is really about reputational harm. At the time we thought he was going to kill her. He was going to go ahead and squash her like a bug, make sure she never wakes up again. You'll see in other letters where his idea of harming someone, and in the letters that he sends to the trial court, is about the reputational harm of him hurting someone's reputation by saying that they're a lousy FBI agent, that they're a bad trial court, those types of things. So that was something that the trial court, in all the interaction, both before and after the competency evaluation, that the trial court had an opportunity to go ahead and view. But obviously we do take our cases seriously, and we would look for the maximum sentence on any case. I don't think the most efficient thing to do here is to make a ruling where he can be tried for what he was charged with. You don't think that's the best thing to do? Based on the unique facts, and I'd say limited to the facts in this case on it, that the United States would take the position that the trial court did not clearly err, that the trial court was permitted, although we believe the trial court erred, it didn't clearly err, it was permissible. I get that distinction you're making. Maybe a more practical answer to Judge Merritt's question. This was, I think, seemed to be motivating Judge Polster. He would get credit for time served, and you just didn't seem to give an answer to the explanation. My surprise at the fact that the guideline range for threatening to kill an FBI agent is under two years. You didn't respond by saying, well, no, no, it's actually up to ten. In this case, it just would be closer to two. But I think your answer is no. He probably wouldn't get much more of a sentence than two years. If no credit to time served, he wouldn't actually go to jail. Correct, Your Honor. So that's the practical answer to Judge Merritt. If a judge has got discretion in sentencing, he can vary the sentence, right? Certainly could, yes. Is there a statutory maximum? Oh, yes, yes. What is it? The statutory maximum for the five years for interstate communications, I believe it's five years for the retaliating and five years for cyberstalking. So it's up to 15 years, I guess. Correct. So he could sentence him to 15 years, and how old is the guy? Mr. Bergeron was in his 50s. Strange case.  Thank you, Your Honor. Thank you. Any rebuttal? I think, like I said, I think the problem, this is not a mental health case, in my opinion. I think that there are other ways of dealing with clients. And I think that to use the mental health rubric, when no doctor has said that he's suffering from medical delusions, everybody has made it clear he's not suffering from the kinds of delusions that many of the capital clients I've been involved with. That's not on the table here. The psychologists, whether they say he was competent to stand trial or not, said he doesn't have delusions. And I quote that in our brief. I think that when he gets in the courtroom, the judge wasn't holding him in contempt for accusing him of being the Nazi theory or whatever, a variety of things he has said. He was clear. He said, what I want as judge, I don't think, I don't want to be mentally incompetent the way my lawyers want me to do. The government's not saying anything. And you all want, you know, send me to jail. He didn't. He was very rational and was able to function in the courtroom. I wish some of my clients would do that in the courtroom. Well, so far it's worked out very well for him. He's having a good time. Well, I don't understand that. I will tell you he doesn't particularly appreciate my skills and arguments, but I've done the best I can here. And I think, but I think that this isn't a medical problem. And it shouldn't be dealt with in the medical context. And as Mr. Bergeron has said, he would much prefer the, to being found incompetent. And we can talk about procedures, but these things are fraught with, these things aren't clear cut. There's no way for me to sit down and say, you know, if you do this, this, and this, this is what's going to happen. One thing, you know, God only knows what happens with this case. But one point, I mean, on the one hand, the finding of incompetence, it seems, would give Article III standing and injury to keep going. But, you know, it is, competency is a fluid concept. So to the extent he, quote, loses this case, he does have the remedy of, you know, getting psychiatrists to judge him, to go to a state court or whatever it is and establish that he is competent. So that's just a friendly advice point. The procedural aspect, though, of trying to overturn a federal finding, for example. It wouldn't be overturning it. What? It wouldn't be overturning it. Right. I mean, but. You'd be saying it's fluid. All it means is that's what was true at that point in time, and it doesn't necessarily mean it's true at a later point in time. I think that the medical issues are fluid. I'm not sure that the legal issues have that fluidity to them. And the result of saying that he is not incompetent is to go to trial, right? Yes. Yes. We go to trial and we see whether he's convicted or not, and that will be the end of it. Right. Well, if he's convicted, we'd then have on appeal whether he was competent to help his lawyer. Pretty confident. At trial, but. It would be a different lawyer. I get it. Right. You're not going to talk out of both sides of your mouth, but I have just a sneaking suspicion. Well, he's claiming he's not incompetent to go to trial, right? Yes. He wants to go to trial. He's conceding that he's competent. Yes. Yes. But if he gets convicted, that would be the sign that he was incompetent. Who would make that choice? Well, you can't have it that way. No, no. You can't be competent and incompetent at the same time. Maybe you could. I don't know. Well, I guess I would ask that you look at that last transcript. I've highlighted the points in my book. Thank you. Mr. Krim, the court thanks you for taking this case under the Criminal Justice Act. We know you do bad assessors. You never know what you're going to get. I had some very interesting clients. Well, the case is submitted.